**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| RAFAEL AMELLAR | * | |
|     Plaintiff | * | |
| v. | * | |
| MIHAI A. VINATORU, *et al.* | * | Civil Action No.: 10-CV-3390-RWT |
|     Defendants/Third-Party Plaintiffs | * | |
| v. | * | |
| GERALD GROH, JR. | * | |
|     Third-Party Defendant | * | |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT GERALD RUSSELL GROH, JR.'S MOTION FOR SUMMARY JUDGMENT**

The Third-Party Defendant, Gerald Russell Groh, Jr. ("Groh"), by Council, Baradel, Kosmerl & Nolan, P.A., Edwin H. Staples, II and Carissa M. Hyman, his attorneys, pursuant to the Federal Rules of Civil Procedure Rule 56 and Local Rule 105, hereby files this Memorandum in Support of Third-Party Defendant Gerald Russell Groh, Jr.'s Motion for Summary Judgment and in support thereof states the following:

**I. INTRODUCTION**

The instant matter involves Defendants/Third-Party Plaintiffs' efforts to place blame upon anyone but himself/itself for causing the accident that occurred on May 5, 2009. Other than Defendant Mihai A. Vinatoru ("Vinatoru") and his passenger, Adam Alb ("Alb"), none of the other known witnesses (including Plaintiff Ameller) blame Groh (in any way) for causing or contributing to the accident at issue in this case.

The only potential "disputes" of material fact in this matter are fabricated (nonsensically) by

Defendants/Third-Party Plaintiffs' discovery responses and deposition testimony, and taken in combination with all of the evidence established in this matter, it is clear that no actionable wrong was committed by Groh in this incident.

Even the mildest scrutiny of the facts adduced in this matter establishes that the claims alleged by Defendants/Third-Party Plaintiffs against Groh are ultimately without any substantive merit, entitling Groh to judgment as a matter of law.

## II. UNDISPUTED FACTS

The instant litigation involves a motor vehicle accident that occurred on May 5, 2009 at approximately 11:52 a.m. on the inner loop of Interstate 495 ("I-495") near the exit onto Interstate 95 North ("I-95"). This area of I-495 (in the vicinity of Riggs Road) is a five-lane highway with a posted speed limit of 55 miles per hour. There were three vehicles involved in said collision: (1) a 2005 International yellow box truck ("box truck"), owned by Penske Truck Leasing and operated by Vinatoru ; (2) a 2005 Ford F-150 grey pickup truck ("pickup"), owned and operated by Groh; and (3) a 2003 silver Hyundai Accent ("Hyundai"), owned and operated by Plaintiff Rafael Ameller ("Ameller").

Just prior to the collision, Ameller was operating his Hyundai eastbound in the right-most lane (lane 5) of I-495 that could exit onto I-95 North. At the same time, Groh was operating his pickup, within the posted speed limit, eastbound on I-495 in the lane to the left of Ameller (lane 4). Also at the same time, Vinatoru was operating the box truck eastbound on I-495 in the lane to the left of Mr. Groh (lane 3).

Suddenly and without warning, the box truck (operated by Vinatoru) crossed into Groh's lane (lane 4) and collided with the driver's side of Groh's pickup. The collision forced the pickup into Ameller's lane (lane 5), causing Ameller to swerve to the right. Groh's pickup and Ameller's

Hyundai then collided with one another, causing Ameller to completely lose control of his vehicle. The impact with the Hyundai forced the Groh pickup to re-collide with the Vinatoru box truck. Consequentially, the Ameller Hyundai went off the right shoulder of the highway into 2-3 clockwise barrel rolls before coming to rest on the grassy berm of the highway; the Groh pickup came to a stop on the highway; and the Vinatoru box truck came to a stop farther up the road on the paved triangular area where the I-495 thru lanes and the I-95 North exit lanes split.

After the collision, Groh got out of his vehicle to attempt to render aid to Ameller and dialed 911. Tessa Carter and Randy Gertz witnessed the accident and stopped their vehicles at the scene of the collision. Vinatoru and his passenger exited the box truck to inspect the truck for damage but did not attempt to render aid to Mr. Ameller, nor did they call 911.

### III. STANDARD OF REVIEW

If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Rule 56. Fed. R. Civ. P. 12(d). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A fact is "material" if it might affect the outcome of the case, and a dispute about such a fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). Unsupported speculation is not sufficient to defeat a summary judgment motion, and it is the duty of the trial judge to prevent factually unsupported claims from proceeding to trial. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

The burden of persuasion rests squarely on the shoulders of the moving party, who must

make the *prima facie* showing that summary judgment is appropriate under Rule 56. *Celetex Corp.*, 477 U.S. at 331. The moving party's burden can be met by highlighting the absence of evidence in support of the non-moving party's claims or defenses, but it need not do so through use of affidavit. *Id.* In opposition, "the non-moving party may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue." *Stricker v. E. Offroad Equip., Inc.*, 935 F. Supp. 650, 653 (D. Md. 1996).

## IV. ARGUMENT

With respect to Defendants/Third-Party Plaintiffs' Third Party Complaint, there is no genuine issue as to any material fact and Groh is entitled to judgment as a matter of law. Even when the facts are taken in the light most favorable to the Defendants/Third-Party Plaintiffs, they are not entitled to relief for the following reasons: (A) there is physical evidence of a collision between the Groh pickup and the Vinatoru box truck; (B) all witness testimony (other than that of Vinatoru and his passenger, Alb) supports the fact that Groh was not responsible, in any way, for causing or contributing to the accident at issue in this matter; and (C) the Defendants/Third-Party Plaintiffs' Third-Party Complaint, discovery responses and deposition testimony, when taken in combination with all of the evidence established in this matter, clearly confirms that no actionable wrong was committed by Groh in this incident; Defendants/Third-Party Plaintiffs have asserted nothing more than bald allegations.

### A. Physical evidence of a collision between the Vinatoru box truck and Groh pickup.

Plaintiff Ameller's expert (Charles D. Pembleton) *and Defendant/Third-Party Plaintiff's expert* (C. Gregory Russell) provided (both in their expert reports and in deposition testimony) that the damage to the driver's side of Groh's pickup is consistent with an impact (arguably one or two impacts) with an International box truck of the same make, model and year as the box truck driven

4

by Vinatoru on May 5, 2009.[1] *See* Pembleton's report attached hereto as **Exhibit A**. Defendants/Third-Party Plaintiffs' own expert, C. Gregory Russell ("Russell") states in his report (contrary to Mr. Vinatoru's assertion that he never hit anything while operating the box truck): "[b]ased on the available evidence in this collision all that may be determined is the left side of the Ford came into contact with a vehicle consistent with the International, though no specific evidence exists it made contact with the International[2], and the right side of the Ford struck the Hyundai." *See* page 7 of Russell's report attached hereto as **Exhibit B**.

Other than the yellow Penske box truck operated by Vinatoru, there has been no evidence presented to show that there was another International box truck anywhere near the vicinity of the accident. In fact, not a single witness has attested that they saw any other vehicle similar to an International box truck on the roadway at the time of the accident.[3]

### B. Witness testimony supports the fact that Groh was not responsible for contributing to or causing the accident at issue.

All available witness testimony (other than that of Vinatoru and Alb) supports the fact that Groh did not operate his pickup in an unlawful, dangerous, or unsafe manner, or in any way cause or contribute to the accident at issue.

Groh, in an affidavit and under oath in his deposition on April 5, 2011, testified that while in his lane of travel (lane 4), the box truck (operated by Vinatoru) collided with his pickup; the

---

[1] Groh testified under oath in his deposition that "all of the physical body damage to the driver's side of the vehicle was caused by the accident on May 5, 2009 with the box truck." *See* Deposition Transcript of Gerald Russell Groh, Jr. – 4/5/2011, page 90, lines 2-4, attached hereto as **Exhibit C**. There has been no evidence presented to the contrary.

[2] The box truck operated by Vinatoru on May 5, 2009 was recently located (Penske Unit #428890). Said box truck was inspected on July 12, 2011 in North Bergen, New Jersey; the results of this inspection will be provided to the Court as a supplementary exhibit upon receipt.

[3] Please note that following a trial in the District Court for Prince George's County, Maryland on August 27, 2009 (case number 410A14), Vinatoru was found guilty of Negligent Driving Vehicle in Careless and Imprudent Manner Endangering Property, Life and Person in relation to the events of May 5, 2009; Vinatoru subsequently received a probation before judgment and paid court costs and fines associated with said finding. Groh did not receive any traffic citations in relation to the events of May 5, 2009.

momentum of the box truck forcing his pickup to the right (into lane 5) causing another collision with the Ameller Hyundai. *See* Affidavit of Gerald Russell Groh, Jr. attached hereto as **Exhibit D**; and Deposition Transcript of Gerald Russell Groh, Jr. – 4/5/2011, pages 40-74, attached hereto as **Exhibit E**. Groh has asserted from the beginning that he was not at fault for any of the collisions.

Even Plaintiff Ameller does not blame Groh for causing the accident at issue in this case. In his deposition, Ameller testified that he did not know what caused the Groh pickup to come into his lane and the Groh pickup was blocking his view with regard to any vehicle that may have been to the left of the Groh pickup. *See* Deposition Transcript of Rafael Ameller – 5/31/2011, pages 138 – 140, attached hereto as **Exhibit F**. Plaintiff Ameller also testified that he did not see the Groh pickup do anything that would have caused his attention to be brought to it; it was not speeding up, slowing down or changing lanes; the Groh vehicle was "just driving along." *See* **Exhibit F**, page 139, lines 13-19.

Mr. David Gertz (a motorist who witnessed the accident) stated both in an affidavit and in his deposition that he believed Plaintiff Ameller to be at fault for the accident that occurred on May 5, 2009. *See* Affidavit of David Gertz, attached hereto as **Exhibit G**. Although Mr. Gertz's recollection of the incident differs from that of the other witnesses', he never contends that Groh caused or contributed to the accident, nor did he ever see the Groh pickup perform any maneuvers he believed to be inappropriate and/or dangerous.[4] Moreover, Mr. Gertz took photographs at the scene of the accident on May 5, 2009. Even though the bright yellow Penske truck is visible in the distance of one of the photographs, Mr. Gertz affirmed that he never saw a yellow box truck at the scene (or any box truck for that matter). *See* Photograph taken by Mr. Gertz, attached hereto as

---

[4] Please note that Mr. Gertz's deposition was taken on July 7, 2011; undersigned counsel has yet to receive a deposition transcript, but will provide a copy of said transcript to the Court as a supplementary exhibit upon receipt. Dispositive Motions in this case are due today, July 13, 2011 by 11:59 p.m.

**Exhibit H**. Additionally, Mr. Gertz consistently refers to the Ameller Hyundai as a "white vehicle," however it is clear that the Ameller Hyundai is silver in color. *See* **Exhibit G**.

Ms. Tessa Carter (another motorist who witnessed the accident) is expected to testify[5] that on May 5, 2009 she "was driving a Dodge truck, traveling in the same lane and directly behind Mr. Vinatoru in his yellow Penske box truck…when…[s]uddenly, without any warning and without signaling, the yellow truck in front of her abruptly swerved hard to its right, into the next lane. It appeared to Ms. Carter that the driver of the yellow truck suddenly realized he was going the wrong way and needed to get onto I-95. The yellow truck hit into the side of the pickup truck that was already in the lane to the right of the yellow truck. This caused the pickup truck to be thrown to its right. Ms. Carter saw a white car in the lane to the right of the pickup truck swerve right, then back left, then back to the right, and it started flipping and rolled over and over into the ditch to the right side of the highway. ***There is no doubt in Ms. Carter's mind that the collision was 100% the fault of the driver of the big yellow truck*** that had been directly in front of her." *See* Plaintiff's Supplemental Answers to Defendant Vinatoru Enterprises, Inc.'s Interrogatories, Supplemental Answer No.3, page 3 (emphasis added), attached hereto as **Exhibit I**.

**C. Defendants/Plaintiffs' allegations are not established or supported by any evidence.**

The Defendants/Third-Party Plaintiffs' Third-Party Complaint, discovery responses and deposition testimony, when taken in combination with all of the evidence established in this matter, clearly confirms that no actionable wrong was committed by Groh in this incident; Defendants/Third-Party Plaintiffs have asserted nothing more than bald allegations.

First, Vinatoru testified in his deposition on May 31, 2011 that on the date of the accident, he was driving (on a return trip) from North Carolina to New Jersey and that his route was "85 to

---

[5] Ms. Carter lives in Connecticut and has just recently been located. Her deposition is in the process of being scheduled. As such, undersigned counsel will provide a copy of said transcript to the Court as a supplementary exhibit upon receipt.

Richmond. And from Richmond, 95." *See* Deposition Transcript of Mihai Vinatoru – 5/31/11, page 48, lines 9-10, attached hereto as **Exhibit J.** Vinatoru further testified that while on I-495, he was to exit onto I-95 North to reach his final destination (New Jersey): "…I don't recall where I did see another sign, but I knew that I have [sic] to move right." *See* **Exhibit J**, page60, lines 10 -11. Ms. Carter's recollection of the accident (and the box truck's sudden change of lanes) is congruent with Vinatoru's intended route of travel; clearly he needed to get from lane 3 to lane 4 in order to exit I-495 onto I-95 North.

Defendants/Third-Party Plaintiffs also allege in their Third-Party Complaint that Groh was traveling at an excessive speed, however Vinatoru testified that he only observed the Groh pickup for a fraction of a second. "Q: And how long would you say that you observed the Groh truck? A. Fraction of a second also. Like when I looked, they were both together. I could not see one differently than the other." *See* **Exhibit J**, pages 138, line 22, and page139, lines 1-4. Undersigned counsel finds it amazing that Vinatoru was able to determine, within a fraction of a second, whether or not Groh was operating his vehicle at an excessive speed; all other available evidence contradicts Vinatoru's assertion.

Furthermore, Vinatoru's claim that the Penske box truck he was operating did not come into contact with any other vehicle is laughable. Not only is there physical evidence and eye witness testimony to the contrary, but also, Vinatoru's explanation as to why he stopped the Penske truck following the accident is illogical. Vinatoru stated "I stop [sic] because I seen [sic] an accident. I was a witness to an accident." *See* **Exhibit J**, page 88, lines 18-19. Although Vinatoru claims he stopped the box truck because he witnessed an accident, he did not attempt to render aid to Ameller, nor did he even attempt to call 911 (even though he and his passenger had cell phones). Vinatoru testified "[w]hy didn't I call 911?…You know, I figured somebody else would…That's why I

stopped because I was concerned. But I did not – I did not think to call." *See* **Exhibit J**, page 91, lines 12 & 14, and page 102, lines 4-5.

Interestingly, upon stopping the box truck, Vinatoru (although he claims was not involved in the accident) got out of the truck and his passenger (Mr. Alb) took pictures of the box truck. "I remember that after a few minutes, the emergency truck came. And he asked what happened, and if we had – if we hit any vehicles. And we say no. And he look [sic] around the truck. He didn't say anything. So that's when it prompted me that if he might see something or might claim to see something, just for our evidence." *See* Deposition Transcript of Adam Alb, Page 26, lines 10-18, attached hereto as **Exhibit K**. Most people who are mere "witnesses" to an accident don't behave in such manner.

## V. CONCLUSION

There is no genuine dispute of material fact in this matter, and once the bald allegations set forth in Defendants/Third-Party Plaintiffs Third Party Complaint, which have been consistently and universally discredited by every piece of information revealed in discovery, are stripped away, those facts clearly establish that Groh is entitled to judgment as a matter of law as to the claims raised against him by Defendants/ Third-Party Plaintiffs in this matter.

WHEREFORE, in consideration of the foregoing, Third-Party Defendant Gerald Russell Groh, Jr. respectfully requests that Third-Party Defendant Groh's Motion for Summary Judgment be granted in its entirety.

COUNCIL, BARADEL,<br>
KOSMERL & NOLAN, P.A.

BY: *Edwin H. Staples/CMH*
EDWIN H. STAPLES, II (Fed. Bar No.: 08760)
CARISSA M. HYMAN (Fed. Bar No.: 29326)
125 West Street, 4th Floor
Post Office Box 2289
Annapolis, Maryland 21404-2289
(410) 268-6600
***Attorneys for Third-Party Defendant,
Gerald R. Groh, Jr.***

## CERTIFICATE OF SERVICE

I hereby certify that on this __13__ day of July, 2011, a copy of the foregoing Memorandum in Support of Third-Party Defendant Gerald Russell Groh, Jr.'s Motion for Summary Judgment was **emailed** to:

Peter C. Grenier, Esquire
Bode & Grenier, LLP
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, DC 20036
pgrenier@bode.com
***Attorney for Plaintiff***

Thomas V. McCarron, Esquire
Semmes, Bowen & Semmes
Suite 1400
25 South Charles Street
Baltimore, MD 21201
tmccarron@semmes.com
***Attorney for Defendants Mihai A. Vinatoru &
Vinatoru Enterprises, Inc.***

*Edwin H. Staples/CMH*
EDWIN H. STAPLES, II

10